# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| Gilbert B. Morgan and Deette S. Morgan, ) | |
| ) | Civil Action No. 6:13-cv-03593-JMC |
| ) | |
| Plaintiffs, ) | |
| v. ) | |
| ) | |
| HSBC Bank USA, National Association ) | |
| Association as Trustee for the Holders ) | **ORDER AND OPINION** |
| of the Ellington Loan Acquisition Trust ) | |
| 2007-2 Mortgage Pass-Through Certificates, ) | |
| Series 2007-2, Bank of America, N.A., and ) | |
| Nationstar Mortgage, LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

      Plaintiffs Gilbert B. Morgan and Deette S. Morgan ("Plaintiffs") filed this action against Defendants HSBC Bank USA, National Association as Trustee for the Holders of the Ellington Loan Acquisition Trust 2007-2, Mortgage Pass-Through Certificates, Series 2007-2 ("HSBC Bank"), Bank of America, N.A. ("BANA") and Nationstar Mortgage, LLC ("Nationstar") (collectively, "Defendants") seeking a jury trial to determine actual, punitive and treble damages along with attorney's fees and costs, and alleging breach of contract and violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-10 to -560 (2014). (ECF No. 1-1.)

      This matter is before the court on Defendants' Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6) Motion") because Plaintiffs have failed to state a claim for which relief may be granted. (ECF No. 11.) Plaintiffs oppose the Rule 12(b)(6) Motion asserting that the Complaint states appropriate claims for relief. (ECF No. 19.) For the reasons set forth below, the court **DENIES** the Rule 12(b)(6) Motion as to the breach of contract

1

claim and **GRANTS** the Rule 12(b)(6) Motion regarding the SCUTPA claim.

## I. JURISDICTION

Federal courts are courts of limited jurisdiction. A defendant is permitted to remove a case to federal court if the court would have had original jurisdiction over the matter. 28 U.S.C. § 1441(a). A federal district court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between — (1) citizens of different states . . . ." 28 U.S.C. § 1332(a). The removing party has the burden of establishing federal jurisdiction. *Mulcahey v. Columbia Organic Chems. Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994). 28 U.S.C. § 1332 requires complete diversity between all parties. *Strawbridge v. Curtiss*, 7 U.S. 267, 267 (1806). Complete diversity requires that "no party shares common citizenship with any party on the other side." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). Because federal courts are forums of limited jurisdiction, any doubt as to whether a case belongs in federal or state court should be removed in favor of state court. *See Auto Ins. Agency, Inc. v. Interstate Agency, Inc.*, 525 F. Supp. 1104, 1106 (D.S.C. 1981).

**A. Diversity of Parties**

Plaintiffs are domiciled in South Carolina. (*See* ECF No. 1-1 at ¶ 1.) HSBC Bank is a citizen of Virginia because its articles of association establish its main office as located in McLean, Virginia. (ECF No. 1 at ¶ 11.); *see Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006) (explaining that a national bank is a citizen of the State in which its main office, as set forth in its articles of association, is located); *see also Willis v. Bank of Am. Corp.*, No. ELH-13-02615, 2014 U.S. Dist. LEXIS 105339, at *116 (D. Md. Aug. 1, 2014). BANA is a citizen of North Carolina because its articles of association establish its main office in North Carolina.

(ECF No. 1 at ¶ 12 (citing, *e.g.*, *Wachovia Bank*, 546 U.S. at 307).) Nationstar is a citizen of both Delaware and Texas as it is incorporated under the laws of Delaware, its articles of association establish that its main office is in Texas, and its principal place of business is in Texas. (ECF No. 1 at ¶ 13 (citing, *e.g.*, *Wachovia Bank,* 546 U.S. at 307; 28 U.S.C. 1332(c)(1)).)

The court is satisfied that there is complete diversity between parties. No defendant is a citizen of South Carolina. (*See* ECF No. 1 at ¶¶ 10–14.)

**B. Amount in Controversy**

The United States Court of Appeals for the Fourth Circuit has not set forth a rule concerning the burden of proof on the removing party in regard to establishing the amount in controversy. *See, e.g.*, *Rota v. Consolidation Coal Co.*, No. 98-1807, 1999 U.S. App. LEXIS 6125, at *5 (4th Cir. Apr. 5, 1999) (expressly declining to adopt a particular standard of proof for determining the amount in controversy). Courts within the District of South Carolina are inclined to require "defendants in this position to show either to a 'legal certainty' or at least within 'reasonable probability' that the amount in controversy has been satisfied." *Phillips v. Whirlpool Corp.*, 351 F. Supp. 2d 458, 461 (D.S.C. 2005).

Where a complaint does not specify an amount, "the object which is sought to be accomplished by the plaintiff may be looked to in determining the value of the matter in controversy." *Mattison v. Wal-Mart Stores, Inc.*, No. 6:10-cv-01739-JMC, 2011 U.S. Dist. LEXIS 11634, at *4 (D.S.C. Feb. 4, 2011) (internal citations and quotations omitted). Where the plaintiff has alleged an indeterminate amount of damages, the court may consider the plaintiff's claims as alleged in the complaint, the notice of removal filed with the court, and other relevant materials in the record. *Crosby v. CVS Pharm., Inc.*, 409 F. Supp. 2d 665, 667 (D.S.C. 2005). The court is limited to examining only evidence that was available at the moment the petition for

removal was filed. *Id*. The court may include claims for punitive and consequential damages as well as attorney fees and costs in assessing whether the amount in controversy is satisfied to establish diversity jurisdiction. *See Mattison*, 2011 WL 494395, at *5; *see also Thompson v. Victoria Fire & Cas. Ins. Co.*, 32 F. Supp. 2d 847, 849 (D.S.C. 1999) (holding the amount in controversy exceeds $75,000.00 where complaint sought consequential damages, punitive damages, and attorneys' fees and costs beyond the $25,000.00 in actual damages claimed).

The court is satisfied that the amount in controversy exceeds the $75,000.00 requirement under 28 U.S.C. § 1332(b). Although Plaintiffs do not specify an amount prayed for, they seek actual, punitive and treble damages concerning their $291,120.00 mortgage loan and the money they lost trying to have the loan modified. (ECF No. 1-1 at ¶¶ 2, 19, 3.) Plaintiffs also seek attorney's fees and costs. (*Id.* at ¶¶ 19, 3.)

## II. RELEVANT BACKGROUND

The following relevant facts from the Complaint are taken as true only for the purposes of the pending motion. *See Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999).

Plaintiffs are the owners of lot 449 of Gower Estates, Section D. (ECF No. 1-1 at ¶ 1.) On February 22, 2007, plaintiffs obtained a $291,120.00 mortgage loan, which is the subject of this action. (*Id.* at ¶ 2.) The mortgage loan was assigned to defendant HSBC Bank on February 22, 2012. (*Id.* at ¶ 4.) The mortgage loan was then assigned to defendant Nationstar on July 17, 2013. (*Id.* at ¶ 5.) The mortgage loan is presently held by Nationstar and is in an active foreclosure. (*Id.* at ¶ 6.) On or about March of 2010 Plaintiffs were unable to make payments on their mortgage loan. (*Id.* at ¶ 7.) HSBC Bank filed an action for foreclosure on or about April 18, 2012. (*Id.* at ¶ 8.) Shortly after, Plaintiffs began working with HSBC Bank through defendant BANA to obtain

a loan modification. (*Id.* at ¶ 9.) BANA continually requested that Plaintiffs provide documents they had previously submitted to BANA. (*Id. at* ¶ 10.) BANA continually replaced the case worker assigned to Plaintiffs' loan modification request. (*Id.*) BANA had to "start over" on Plaintiffs' case with each newly assigned case worker. (*Id.*) On or about June 23, 2012, Plaintiffs received correspondence, the "agreement", from BANA stating that they were eligible for a loan modification subject to Plaintiffs' compliance with a trial period plan. (*Id.* at ¶ 13.) The "agreement" required that Plaintiffs submit three trial period payments in the amount of $1,284.00 each. (*Id*. at ¶ 14.) These payments were to begin August 1, 2013 and continue through October 1, 2013. (*Id.*) Plaintiffs made payments in accordance with the trial period plan in August, 2013 and September, 2013. (*Id.* at ¶ 15.) BANA cashed both of these payments. (*Id.*) On or about October 3, 2013, BANA returned Plaintiffs' third check, which had been timely submitted by Plaintiffs for their October payment, with correspondence indicating that the "Loan Has Been Serviced Released". (*Id.* at ¶ 16.) Plaintiff was not provided any reason why the third check was returned after the first two had been cashed without issue. (*Id.* at ¶ 17.)

## III. LEGAL STANDARD AND ANALYSIS

### A. Motion to Dismiss Pursuant to Rule 12(b)(6)

In general, a Rule 12(b)(6) Motion should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. *See, e.g.*, *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A Rule 12(b)(6) Motion challenges the legal sufficiency of the facts alleged in the plaintiff's complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A legally sufficient pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to defeat a Rule 12(b)(6) Motion, "[f]actual allegations

must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint should contain enough factual matter, which when accepted as true, states "'a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly,* 550 U.S. at 1969. The court will construe all factual allegations in the light most favorable to the plaintiff. *TSC Research, LLC v. Bayer Chems. Corp.*, 552 F. Supp. 2d 534, 538 (M.D.N.C. 2007) (citing *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). When considering a Rule 12(b)(6) Motion, the court generally may not consider extrinsic evidence. *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point*, LLC, 794 F. Supp. 2d 602, 611 (D. Md. 2011). However, when a "defendant attaches a document to its motion to dismiss, a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Id.* This exception allows the court to fully consider whether a plaintiff has stated a claim for relief without turning the Rule 12(b)(6) Motion into summary judgment. *See id.* In the present case, Plaintiffs attached the "agreement", referred to in paragraphs thirteen through fourteen of the Complaint, as Exhibit A to their Memorandum in Opposition of Defendant's Motion to Dismiss. (ECF No. 19-1 at 2–3.) The agreement is integral in the present case and therefore the court will consider it when ruling on Defendants' Motion to Dismiss.[1] *Cf. Chesapeake Bay Found., Inc.*, 794 F. Supp. 2d at 611.

---

[1] The court will not consider any other documents in Exhibit A or Exhibit B to Plaintiffs'

**B. Breach of Contract Claim**

In a breach of contract action the plaintiff must show there was a binding contract, a breach of contract, and damages proximately resulting from the breach. *Hennes v. Shaw*, 725 S.E.2d 501, 506 (S.C. Ct. App. 2012). The contract must be reduced to writing. *See Gililand v. Elmwood Properties*, 391 S.E.2d 577 (1980). The contract must be signed by the party being charged. S.C. Code § 32-3-10 (2014). South Carolina law recognizes option contracts. *See Ingram v. Kasey's Assocs.*, 531 S.E.2d 287, 292 (S.C. 2000).

> "Option contracts generally have three main characteristics: (1) they are unilateral contracts where the optionor, for a valuable consideration, grants the optionee a right to make a contract of purchase but does not bind the optionee to do so; (2) they are continuing offers to sell, irrevocable during the option period; and (3) the transition of an option into a contract of purchase and sale can only be effected by an unqualified and unconditional acceptance of the offer in accordance with the terms and within the time specified in the option contract." *Id.*

The court strictly construes option contracts in favor of the optioner and against the optionee. *Id.* Optionors must comply with the terms of the option exactly in order to accept by performance. *Id.*

Upon review, the court finds that Plaintiffs' allegations, taken as true, establish the alleged breach of contract claim. Plaintiffs argue that BANA agreed to let Plaintiffs modify their loan through a trial period plan. (ECF No. 1-1 at 3–4.) The "agreement" Plaintiffs attach to their Memorandum in Opposition of Defendant's Motion to Dismiss, and to which Defendants have not objected, appears to be an option contract signed by BANA. (ECF No. 19-1 at 2–3.) Plaintiffs argue that they complied with the trial period plan exactly by making timely payments

---

Memorandum in Opposition of Defendant's Motion to Dismiss as all other documents presented are not integral to the Complaint.

in the amount BANA requested. (*Id.* at 4.) Plaintiffs accepted an offer from BANA by sending in their first two checks for the trial period payment plan, both of which were cashed. (*Id.*) BANA then returned the third check, effectively ending the trial period payment plan and breaching the contract. (*Id.*)

**C. South Carolina Unfair Trade Practices Act ("SCUTPA") Claim**

SCUTPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." S.C. Code Ann. § 39-5-20 (2014). It also provides that "any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice…may bring an action…to recover actual damages." S.C. Code Ann. § 39-5-140(a) (2014). A plaintiff bringing a private cause of action under SCUTPA must allege and prove that the defendant's actions adversely affected the public interest. *Noack Enterprises Inc. v. Country Corner Interiors, Inc.*, 351 S.E.2d 347, 349–350 (S.C. Ct. App. 1986). Conduct that affects only the parties to the transaction provides no basis for a SCUTPA claim. *Robertson v. First Union Nat'l Bank*, 565 S.E.2d 309, 315 (S.C. Ct. App. 2002). "An impact on public interest may be shown if the acts or practices have the potential for repetition." *Singleton v. Stokes Motors, Inc.*, 595 S.E.2d 461, 466 (2004).

> "The potential for repetition may be shown in either of two ways: (1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) by showing the company's procedures created a potential for repetition of the unfair and deceptive acts." *Id.*

However, a plaintiff must use *specific facts* to show that members of the public were or were likely to be affected. *Jefferies v. Phillips*, 451 S.E.2d 21, 23 (S.C. Ct. App. 1994) (emphasis added). Absent specific facts, a plaintiff is merely offering a speculative claim about adverse

8

public impact. *Id.* "In the course of human endeavor, every action has some potential for repetition. The mere proof that the actor is still alive and engaged in the same business is not sufficient to establish this element." *Id.* at 24.

Upon review, the court finds that the Complaint does not establish a claim under SCUTPA. Plaintiffs did not allege facts which suggest Defendants' actions have a potential to impact the public interest. Plaintiffs failed to provide any specific facts that suggest that their experience is likely to be the experience of others. Plaintiffs did not establish that the alleged conduct is standard business practice for BANA. Plaintiffs simply rely on the fact that BANA continues to exist and practice the same business, and that is not sufficient. *See Jefferies*, 451 S.E.2d at 24.

## IV. CONCLUSION

For the foregoing reasons, the court **DENIES** Defendants' Motion to Dismiss as to the breach of contract claim. (ECF No. 11.) The court **GRANTS** Defendants' Motion to Dismiss regarding the SCUTPA claim. (*Id.*)

**IT IS SO ORDERED**.

*J. Michelle Childs*
United States District Judge

June 24, 2015
Columbia, South Carolina

9